Our fourth case for argument this morning is Cherry v. United States. Mr. Gregory. Thank you, Your Honor, and may it please the Court, Matt Gregory for Mr. Cherry. This is another Section 2255 appeal. We have three ineffective assistance claims that we've raised in our briefs. Today I'd like to focus primarily on two of those. The first one being the statutory sentencing enhancement under Section 841B, and I'd like to walk through how the government's concessions in this case lead pretty clearly to reversal. And second— And when you go through that, please, given the government's concession that the 851 enhancement claim was not made, which would be the proper resolution? A remand for an evidentiary hearing to, you know, to address whether defense counsel had a strategic reason for failing to raise the challenge to the enhancement as is suggested in common, or a remand for resentencing? I think the answer to Your Honor's question will be both. I'm happy to explain why in just a moment. The other issue I just want to make sure we have time to address today is the confrontation clause challenge, which is obviously quite important to Mr. Cherry, given that it goes to his actual conviction, not just the sentencing issues. So on the Section 841B enhancement, just to sort of level set where we are now, the government's main argument in its briefing was waiver. They've correctly now withdrawn that argument. We thank them for that, and it does simplify the issues for this Court. They've also conceded performance in their brief. This is at page 25. And they've conceded prejudice, at least as to the term of supervised release. This is page 25, note 5, I believe. What that leaves is a pretty narrow dispute about the sentencing range itself, which this error also affected Mr. Cherry's sentencing guidelines range. It went from 262 to 327 months, all the way to 360 months to life. And under Molina-Martinez, and this Court's en banc decision in Rollins, that is presumptively prejudicial. This is not the unusual case where the judge said he would apply the same sentence anyway. So you have prejudice there, too. In sentencing him, the Court did say even leaving aside all career offender considerations. Would that be sufficient to say that it doesn't matter that a mistake was made here on the enhancement that upped the guidelines? No, Your Honor. Not under Molina-Martinez or Rollins. You would need more than that. So in every case, of course, the district court is required to walk through these factors and say why it's a reasonable sentence. I don't think you can dispute the Court clearly did that here with 3553A. Correct. We're not disputing substantive or reasonableness or anything like that. I think the Court correctly walked through those factors. But the entire premise of the sentencing was based on incorrect guidelines range, which if you go back to Molina-Martinez and Rollins means we assume prejudice unless there's something otherwise that makes it very clear that this is an unusual case. You just don't have that here. What about the specific sentence that Judge St. Eve focused on from the sentencing transcript? The judge did say that leaving aside all career offender considerations. Here's my analysis. I think the answer to that is that it makes clear that the judge thought it was a reasonable sentence. That doesn't mean the judge thought it was the sentence he would impose either way. And that's similar to what happened in Coleman. In Coleman you had a mandatory minimum life sentence. The judge says, suggests that maybe he would have applied the same sentence either way. This Court said that's not enough to satisfy Molina-Martinez and Rollins. So that's too vague. It's too vague, yes. Well, it's also just a different statement. There are cases where judges say irrespective of any guidelines error I would impose the same sentence. That's not what you have here. You have a judge saying irrespective of the career offender enhancement, this is reasonable given all these other factors. What about the remedial question that Judge Rovner asked about? Yes, Your Honor. So for the statutory enhancement and the guidelines error, we think the minimum relief would be resentencing given the government's concessions. I don't think you actually need an evidentiary hearing anymore on that. But Mr. Chair, it was also prejudiced with respect to his inability to negotiate a favorable guilty plea. There's just not a record on that such that he could get relief on that without more evidence in the record about what plea negotiations looked like. So we think the correct remedy on remand would be an evidentiary hearing. That seems very speculative, your plea argument, because he hasn't said anything in the record. Oh, I would have pled guilty if I had known. That seems extremely speculative under our case law, just saying the potential may be possibly. Well, it's actually incorrect. In his reply brief, this is at page… You said he would have been more likely to plead guilty if he knew the sentencing. In his pro se reply brief below, he said that he would have accepted a guilty plea, and he said that the negotiations that his counsel did have with the government were premised on the guidelines range. Now, of course, he's pro se below, so he did not get this as clear as we would like it, but it is clearly in the record that that's what he says, and he should have used up the opportunity. You have not argued that here. I have not, and maybe I missed it, but I didn't see you arguing that here, that he would have pled guilty if he had known this other guideline range, and it's a little bit hard to say that because he did get a below guideline range sentence, even if you take out the improper enhancement with 841 and 851. Well, we haven't said that the record demonstrates that he would have accepted and obtained the plea, but we did say, and Mr. Cherry would on remand say, that he would have accepted a plea deal if it was premised on the correct guidelines range. So that is in the record. It is in our briefs. Of course, he hasn't had an interior hearing yet, so he would have to do a lot more to show that the government would have offered him such a plea deal and that he would have accepted it. But the case of the government sites where defendants fail, you have that record. You have a record of a plea colloquy, something like that, where it's very clear that the defendant would have proceeded anyway despite the sentencing error. I want to go back real quickly to the comment the judge made about leaving aside all career offender considerations. Is it your argument that that statement goes not to the guideline piece under 841, but to the fact that he has a status as a career offender, which suggests he's been involved in a lot of crimes or has quite a history? It's certainly clear from the transcript that the judge was focused on the criminal history. I don't think we could dispute that. Now, that said, of course, this is, again, in the 355.3a portion of the analysis where we have already started from an incorrect guidelines range and the district judge is explaining why the sentence is reasonable because the guidelines are not mandatory. Of course, the judge is required to do that. Now, the cases where the government wins on prejudice in these circumstances, you have something far different. You have someoneóUSB Anderson is an example of this, cited in the party's briefs. The district judge, on the record, recognizes a potential guidelines mistake and says, I would have done the same thing either way. You can think of other examples where there was a mandatory minimum involved or something like that, but Molina-Martinez makes clear these are rare cases. In the ordinary case, given the importance of guidelines, we assume that they did have an effect. The other part of the sentence and transcript that I'd like to point to here isóthis is at 554 to 55ó the government recommended the ultimate sentence, 240, and started from the guidelines range. They start at 360 and they recommend a downward departure. If you do the exact same thing with the correct range, you end up with 142 months, which is still a very substantial sentence and is still entirely consistent with the reasoning the judge gave when the judge was analyzing the three 553A factors. If the court has no further questions about the sentencing enhancements, I'd like to move to the confrontation clause. So just to level set sort of what happened here, the government, through a DEA agent, was able to relay to the jury, out-of-court statements by an informant saying that Mr. Cherry was a drug dealer, that he was planning to purchase 13 kilograms of cocaine, and then went on to relay statements that corroborated everything that the rest of the evidence at trial said and that the government pointed to. The government's primary argument, again here, is waiver. I don't think they've retracted this one in their filing on Monday. That might be a question for them, but as I understand it, they are still arguing waiver. The record here is quite clear. This is at A673-79. Mr. Cherry cites the confrontation clause. He cites Crawford. So even if that satisfies the performance prong, Mr. Kimmery, you still have to establish prejudice. And how can you establish that Mr. Cherry, that there's not a reasonable probability, that there's a reasonable probability that had counsel raised this, the result of the proceedings would have been different, given that a limiting instruction was given about that statement and given the evidence here, including your client's essential confession when he was approached? I'll start with the limiting instruction, Your Honor. So this court's decisions in Jones and Lovelace explain why the limiting instruction cannot cure statements like this. Again, this is the core of what the confrontation clause prohibits. It's testimonial statements by an informant to a police officer for the purpose of convicting Mr. Cherry. The jury hears that he's a drug dealer and that he's planning to buy 13 kilograms of cocaine. A lay juror is not going to be able to separate that in his or her mind from, you know, what was the background of the officer's investigation, and that's exactly what this court said in Jones and Lovelace. But I would like to address the confession as well. Again, this is a certain case, so we're at the reasonable probability test. It's not a sufficiency challenge where we're saying the evidence was insufficient to convict him. And in his closing arguments, this is at A482 to 486, his attorney explained reasons why the jury might not want to credit the confession, including the circumstances surrounding it and the lack of notes by the agents, things like that. It's a reasonable doubt standard. The jury might have credited those arguments, but, again, you come back to the informant's out-of-court statements. This is the first witness at trial that relays them to the jury, confirms everything that follows, corroborates everything, including the confession. So that's why we think the error was prejudicial. If the court has no further questions, I'm happy to reserve the rest of my time for rebuttal. Thank you. Okay. Ms. Murphy. Good morning. May it please the court opposing counsel. I'm Madeline Murphy. I'm an assistant U.S. attorney appearing on behalf of the United States and asking that this court affirm the district court's denial of the Section 2255 petition because Mr. Cherry failed to meet the Strickland standards on any of the three issues that he raised in his petition. I thought you might concern me. Yeah, I would really appreciate your answering the very first question that I asked Mr. Gregory, which is, given your concession that the 851 enforcement claim wasn't waived, what's the proper resolution here? If the court finds that there is prejudice concerning the Section 851 notice issue, then the resolution I believe would be a resentencing hearing, Your Honor. Not an evidentiary hearing. Your Honor, I do not believe that the facts are in dispute at sentencing. The issue here is strictly one of what's the appropriate guideline range reached and how did that affect the district court's sentence. And addressing that issue, there is nowhere in the sentencing record where the district court's sentence was tethered or anchored to the inappropriate or the, in hindsight, incorrect guideline range. The court focused specifically and very emphatically on the sentence. But the court started out with an incorrect guideline range because the guideline range was driven higher given the 841 enhancement. That is correct, Your Honor. So, and we have said, in Melina Martinez and other cases, that if you start out with an incorrect guideline calculation, that it is presumptively prejudicial. Your Honor, Melina Martinez and Rollins are direct review cases. Unlike the procedural structure. Are you saying that the presumptive prejudice doesn't apply at the 2255 stage? That's correct, Your Honor. What is that based on? That's based on Strickland v. Washington, Your Honor. The petitioner must show an objectively unreasonable tactic by the defense and also that it prejudiced him. That there's a reasonable, that it reasonably influenced the outcome of the case here. So when you apply the Strickland test here, pursuant to Ruth and to Coleman, the conduct of the defense attorney was objectively unreasonable in not raising a challenge to the narcotics conviction here. But the prejudice prong has not been met here. Because there's no evidence in the record, and this is the defense's burden to show a reasonable probability that the result would have been different. That had the court had a different or arrived at a different guidelines range, it would have reached a different result, and there's no evidence in the record. To that effect, the court immediately considered and rejected a 120-month sentence based on the severity of the defendant's criminal history, his recidivism, the fact that prior, multiple prior periods of incarceration had not achieved any rehabilitation, and he appeared to be a danger to the community. This isn't a situation where the court said, I am constrained by the mandatory minimum to give a certain sentence, or I believe that the guidelines range is incorrect, or that a portion of, or that the guidelines range is correct, or that a portion or a percentage of the guidelines range would be an appropriate sentence here. We don't have any dialogue like that in the sentencing transcript. The court focuses exclusively on the Section 3553 factors, so there's no reasonable probability that had the guidelines range been different here, been lower than the 360 to life that all the parties contemplated at the time of sentencing, that there would have been a different sentence here. If the presumption of prejudice does apply, given the incorrect guidelines, have you rebutted that presumption? I believe under these circumstances we have. Why? Assume it applies, so assume we're presuming it. How have you rebutted the presumption based on what the district court said at sentencing? Based on specifically that, Your Honor? Give me a little more, though. What did the district court say that made it clear that he was not relying at all on the improperly calculated guidelines? The district court's recitation of the defendant's criminal history, specifically conviction by conviction, showing that these are convictions concerning violence, concerning drug dealing. The district court's specific reference to the multiple periods of incarceration that the defendant served and still hadn't learned his lesson, hadn't been rehabilitated. And the district court's perception that the defendant is a danger to the community here in terms of his recidivist acts of narcotics dealings. So under those circumstances, I believe that the presumption would be rebutted. Do you concede that the eight-year period of supervised release was prejudicial? The eight-year period of supervised release was incorrect, Your Honor. Do you concede there was ineffective assistance of counsel as to the period of supervised release? I would have to, Your Honor, based on Coleman, based on the fact that the guidelines range was not correct, Your Honor. Tell me this with respect to the career offender issue. How do you respond to the argument that the 1994 convictions for attempted murder and armed robbery cannot qualify as independent predicates because the sentences were imposed on the same day and therefore they're treated as a single conviction and not counted separately? Judge, if we get to that point, Mr. Cherry is correct that those would have been counted as one conviction. But we don't get to that point because the second aspect of his Ruth argument that he should not have qualified as a career offender is squarely foreclosed by the first Ruth case, by the second Ruth case, and a variety of other cases out of the Seventh Circuit, that that Ruth-type analysis simply does not apply in the career offender context. And that would have been the case at the time of sentencing here in 2017 based on this court's precedent, oh, I think from 2010 or 2011, the Hudson case. So we don't get to that point, Your Honor. But if that were correct, that the narcotics conviction could not be used as a career offender predicate, then the court would be correct. He would not be a career offender. Thank you, Ms. Hershey. You're welcome, Your Honor. Moving on to the Confrontation Clause issue, we maintain that there was a waiver here, that in the district courts Mr. Cherry raised the issue of whether his attorney was ineffective for failing to call the CI as a witness, whereas on appeal he is raising the issue that his attorney was ineffective for failing to object to the court's decision to allow one of the case agents to testify as to the CI's statements to the agents. I would submit that there was, first of all, there was no Confrontation Clause violation here because those statements were not admitted for the truth. They were not admitted to show that the CI's claims were correct, but they were admitted to show why the agents did what they did. If you look in the record at the trial transcripts at Item 184, at 54 to 56, Judge Guzman gives a very specific and very comprehensive discussion of why he allowed that testimony in, that certain questions that had been asked during cross-examination, which Cherry does not say at this point were ineffective, had set the stage for that, and that the government was entitled to address that issue on rebuttal. Given that the court instructed the jury that this was not admitted for the truth, and we do presume that a jury follows its instructions. How do you respond to Mr. Gregory's argument that under Jones and Lovelace, the limited instruction isn't sufficient? There's a recent case which escapes my mind. I believe it may have been Graham that relies on Crawford to the effect that under these circumstances it is not testimonial and it is not a Confrontation Clause issue. But in the event that I'm correct on that, Your Honor, we still have harmless error here. This was perhaps a page of transcript in an extensive trial with overwhelming evidence. If you look at the government's brief, oh, I think for pages 39 or 40, there is a comprehensive list of all of the testimony and the evidence, including the defendant's own admissions, that provided overwhelming evidence for the conviction here. The idea that the jury heard a few minutes of testimony as to what the C.I. said and why the agents chose to structure their investigation based on the C.I.'s statement that he'd had prior dealings with the defendant and was anticipating a further transaction with him would have been entirely harmless. And similarly, that would not have been a meritorious argument on appeal. The second aspect of his Confrontation Clause argument that his attorney was ineffective for failing to raise on an appeal on a plain error standard of review. His attorney, it was a reasonable strategic call not to raise that issue on appeal. The likelihood of success, given the harmless error situation, would have been nil and would not, there was no ineffectiveness there in opting not to raise that issue on direct appeal. Well, unless the panel has any further questions, I will ask the Court to affirm the District Court's decision to deny the second 2255 petition. Thank you. Thank you. Mr. Gregory. Thank you, Your Honor. Just a few points on the statutory sentencing enhancement. First, it's just Strickland, the same standard applies for prejudice under Strickland as it did in Molina-Martinez. That's the Coleman case where it cites Molina-Martinez, applies that standard in this exact context and cites a string of cases to the same effect. So does the presumption of prejudice apply when you have an inaccurate guideline calculation in the 2255 context as opposed to on direct appeal? Correct, and that's Coleman. Coleman is a 2255 case. Bridges is a 2255 case. There's a string of cases cited in Coleman on this point. It's also just the same test. I mean, I think you could just look at the test themselves and how the Supreme Court treats prejudice, but you don't have to do that. It's in Coleman. The next point here is on the career offender enhancement. We've acknowledged, Ruth, in our brief, obviously that is controlling precedent here on the issue of whether the career offender enhancement should have applied. We explained why we think it's prejudicial anyway, and we've also preserved Mr. Cherry's right to seek further review on that question. I do think there needs to be a resentencing no matter what, even if you accept my friend's arguments on Molina-Martinez, which I think just are not consistent with the opinions, because we all know that the supervised release portion of this was prejudicial. So no matter what, there has to be a resentencing here. Is that something we could do ourselves if it's just the supervised release? Two responses, Your Honor. The first answer, and I think the correct one, is no, because sentencing is a package that includes supervised release and a time of imprisonment, and in this case, the error affected both the guidelines range and the term of supervised release. The second answer, though, is at minimum you should do that. So if you disagree with me on everything I just said, which you shouldn't for the reasons we've explained, Mr. Cherry is at least entitled to the government's concession that he gets the reduced term of supervised release. So that brings me, Your Honor, to the Confrontation Clause. On this issue of waiver, I think the record is very clear. I'm happy to answer Your Honor's questions if you have any. For a pro se litigant, this is far more than he needed to do. He cited the clause, he quoted cases, he quoted Agent Braslow's testimony, said it was being used against him to convince the jury. On prejudice, I think the best evidence here that this is prejudicial is you can just go back to the government's rebuttal and its closing arguments. After Mr. Cherry's attorney had explained why the jury might not credit all of the other evidence in the case, the government goes right back to the informant's out-of-court statements saying that Mr. Cherry was there to buy 13 kilograms of cocaine and that the informant's story corroborated everything that happened. Next, this is at A490. So under just the reasonable probability standard, a juror could have found Mr. Cherry not guilty without these statements. The last thing I'll say, the Graham case, it's not cited in their briefs. I'm happy to file a supplemental brief if the court would like to address it, but at the moment it just hasn't been put before the court. Thank you. Thank you. Thanks to all counsel, the case is taken under advisement.